IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 15, 2010 Session[1]

**IN RE ESTATE OF ELOISE J. STOREY**

**PEGGIE SHERRILL HUBER**
v.
**LAWRENCE G. YOHANEK, CPA, A/K/A LARRY G. YOHANEK,
SHARRON S. YOHANEK, AND JOHN GARY STOREY**

**An Appeal from the Probate Court for Shelby County
No. D-0552      Karen D. Webster, Judge**
_____

**No. W2010-00819-COA-R3-CV - Filed May 31, 2011**
_____

This lawsuit was filed by the decedent's daughter against other family members alleging undue influence, conversion, breach of fiduciary duty, and civil conspiracy. After the decedent suffered a stroke, the family members, as attorney in fact and signatory on the decedent's bank accounts, made gifts from the decedent's assets to themselves and to other family members. After the decedent died, the plaintiff daughter filed this lawsuit, alleging that the defendant family members wrongfully depleted the decedent's assets during her lifetime so as to deprive the plaintiff of her specific bequest in the decedent's will. The defendants filed a motion for partial summary judgment on various grounds. The trial court granted in part and denied in part the defendants' motion finding, *inter alia*, that the plaintiff did not submit evidence to support several of her claims, and that several claims were barred by the statute of limitations. The Plaintiff now appeals. On appeal, we apply the Tennessee Supreme court's revised analytical framework for summary judgment motions, requiring the defendant movants to either conclusively establish facts supporting an affirmative defense or negate an essential element of the plaintiff's claim. Applying this standard, we affirm in part, reverse in part, and remand.

---

[1]After oral argument in this appeal, as detailed in the body of this Opinion, the appeal was held in abeyance while the parties secured a final, appealable judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court is Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

John D. Horne, Memphis, Tennessee, for the Plaintiff/Appellant, Peggie Sherrill Huber[2]

James M. Hivner, Memphis, Tennessee, for the Defendants/Appellees, Lawrence G. Yohanek, CPA a/k/a Larry G. Yohanek, Sharron S. Yohanek, and John Gary Storey

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

**Background**

John T. Storey ("Mr. Storey") and Decedent Eloise J. Storey ("Mrs. Storey") had three children, Plaintiff/Appellant Peggie Sherrill Huber ("Plaintiff"), Defendant/Appellee Sharron S. Yohanek ("Mrs. Yohanek"), and Defendant/Appellee John Gary Storey ("Mr. John G. Storey"). Mrs. Yohanek is married to Defendant/Appellee Lawrence G. Yohanek, a/k/a Larry Yohanek ("Mr. Yohanek"). Mr. Yohanek is a certified public accountant.

In the 1970s, Mr. and Mrs. Storey owned and operated a successful construction company known as S&E Construction Company. The construction company provided a good living for the Storeys, and they were financially comfortable enough to give substantial gifts of cash and other things from time to time to each of their children. At some point, the Storeys' son-in-law, Mr. Yohanek, became the accountant for the Storeys' construction company.

Mr. Storey died in November 1993. The construction company continued in business after his death, and Mr. Yohanek continued to assist Mrs. Storey with the company's finances.[3] Mr. Yohanek also advised Mrs. Storey in her personal financial affairs.

On May 6, 1998, Mrs. Storey executed a Durable Power of Attorney. It named her son-in-law, Mr. Yohanek, as her attorney in fact.

_____

[2]Mr. Horne was trial counsel for only a portion of the trial court proceedings.

[3]According to the Plaintiff's complaint, the business was liquidated and terminated sometime in 1998.

On the same date, Mrs. Storey executed her Last Will and Testament. It named Mr. Yohanek as the executor of the will. Generally, Mrs. Storey's will provided that all of her personal property would go to her children in equal shares, and that all notes evidencing outstanding loans to her children would be canceled. Under Mrs. Storey's will, the residual estate was to be divided into separate trusts of equal value for each of her children, with Mr. Yohanek to serve as trustee for the trusts.

In the will, Mrs. Storey also made specific bequests to her each of her three children. To Mrs. Yohanek, she bequeathed real property located in Panola County, Mississippi. To Mr. John G. Storey, she bequeathed real property in Tunica County, Mississippi, which was used as a fishing camp. To the Plaintiff, she bequeathed the cash sum of $150,000. The "specific bequest" section of the will included Mrs. Storey's comment that the distribution was her "effort at treating my children equally and I hope that they are pleased and satisfied with the division of my property."[4]

Several years later, in February and March 2001, Mrs. Storey suffered a massive stroke and other smaller strokes that left her physically disabled. The record indicates that, after the strokes, Mrs. Storey required 24-hour assistance with her physical needs. After this, pursuant to Mrs. Storey's power of attorney, Mr. Yohanek handled her finances and assets as her attorney in fact. At some point, Mrs. Yohanek became a co-signator on Mrs. Storey's checking account at First Tennessee Bank. Thus, both Mr. and Mrs. Yohanek were authorized to write checks from Mrs. Storey's bank account.

After Mrs Storey's stroke, Mr. Yohanek wrote numerous checks from Mrs. Storey's checking account. Some were checks written in the normal course of assisting Mrs. Storey with her financial affairs. Some were checks written to Mrs. Storey's three children – the Plaintiff, Mrs. Storey, and Mr. John G. Storey – and other relatives. During this time period, no objection was made by any of the three children to these distributions.

On March 4, 2006, Mrs. Storey died at the age of eighty. On March 30, 2006, Mr. Yohanek filed a petition in the Probate Court of Shelby County to admit to probate Mrs. Storey's Last Will and Testament. On that day, the trial court entered an order admitting the will to probate and, in accordance with the terms of the will, appointing Mr. Yohanek as the executor of the estate.

Several months later, on July 12, 2006, the Plaintiff filed a petition in the trial court below to require Mr. Yohanek to file an accounting and to remove Mr. Yohanek as the executor of

---

[4]Mrs. Storey also bequeathed certain real property to Mr. Michael Todd Hartline. That bequest is not at issue in this appeal.

Mrs. Storey's estate. In her petition, the Plaintiff alleged that, during Mrs. Storey's lifetime, Mr. Yohanek breached his fiduciary duty to Mrs. Storey by making unauthorized gifts from her assets to himself and to other family members, and also by using her VISA credit card for his own personal living expenses. Based on her allegations, the Plaintiff asked the trial court to temporarily remove Mr. Yohanek as the executor of the estate, and to appoint an independent executor until a hearing could be held on the Plaintiff's petition. The petition also sought "punitive damages" against Mr. Yohanek in the amount of $250,000. After a hearing, the Probate Court dismissed this first petition, finding that it alleged no grounds to remove Mr. Yohanek as executor, and that the relief requested against Mr. Yohanek had not been properly pled.

On June 4, 2007, Mr. Yohanek filed three sets of amended federal and state gift tax returns on behalf of the estate. Two reflected gifts made to the Yohaneks either by Mrs. Storey or on her behalf, and the third reflected a gift by Mrs. Storey to the Plaintiff. The first amended gift tax return for Mrs. Storey's estate was for 1999; it was filed in order to list a gift of $150,000 to Mrs. Yohanek that was not reported in Mrs. Storey's original 1999 tax return. The record indicates that in 1999 Mrs. Yohanek in fact wrote herself a check in this amount from Mrs. Storey's bank account to buy herself a house. The second amended tax return Mr. Yohanek filed was for 2003, listing gifts of jewelry made by Mrs. Storey or on Mrs. Storey's behalf to Mrs. Yohanek and the Yohanek children.

In addition, Mr. Yohanek filed an amended gift tax return for 2001, listing a gift allegedly made to the Plaintiff. The gift listed was not actually a direct gift, but rather was the value of a loan that was forgiven. In 1981, Mr. and Mrs. Storey loaned the Plaintiff $135,000 to buy a home. The Plaintiff made monthly payments on the note, but the payments did not cover the full amount of principal and interest due on the loan. In 2001, Mrs. Storey cancelled the note. The amended tax return filed by Mr. Yohanek valued the amount of the unpaid compounded interest and principal due on the Plaintiff's note over a twenty-year period at $652,000. The amended return showed that Mrs. Storey's estate was required to pay taxes, penalties, and interest on this gift of $49,384 to the IRS and $88,587 to the Tennessee Department of Revenue.

**Lawsuit**

On September 10, 2007, the Plaintiff filed the instant lawsuit as an adversarial proceeding under the docket number of the estate. The complaint was headed: "Complaint To Set Aside the Transfers Resulting From Undue Influence, Breach of Fiduciary Duty, And/Or

Conversion And For Damages Resulting From Tortious Interference With Inheritance."[5]  It named as defendants Mr. Yohanek, Mrs. Yohanek, and Mr. John G. Storey (collectively, "Defendants").

The complaint asserted claims against the Defendants in two capacities, first by the Plaintiff as a personal representative of the estate, and second by the Plaintiff as a beneficiary of Mrs. Storey's estate.  In her capacity as the estate's personal representative, the Plaintiff sought damages based on theories of undue influence, breach of fiduciary duty, conversion, and civil conspiracy.[6]  She alleged that, after Mrs. Storey became incompetent and Mr. Yohanek began acting as her attorney in fact, the Defendants gave themselves unauthorized and/or excessive gifts out of Mrs. Storey's bank account and used Mrs. Storey's VISA credit card for their own benefit, not for the benefit of Mrs. Storey.  She claimed that these gifts were disproportionate and inconsistent with Mrs. Storey's past patterns of giving, in which she treated her children equally.  One particular gift noted in the petition was the $150,000 check that Mrs. Yohanek wrote to herself from Mrs. Storey's checking account in 1999, which was not disclosed to the Plaintiff until Mr. Yohanek filed the amended gift tax returns on June 4, 2007.  The Plaintiff also alleged that between 2001 and 2005, the Defendants wrote checks to Mr. John G. Storey from Mrs. Storey's bank account totaling over $120,000, as though Mr. John G. Storey were continuing to work at S&E Construction, when in fact the company had been liquidated by that time.  In addition, the Plaintiff alleged that between 1998 and 2006, Mr. Yohanek withdrew over $2 million from Mrs. Storey's IRA and annuity accounts, withdrawals that were so excessive that Mrs. Storey was required to pay large penalties.  The Plaintiff asserted that the Defendants "acted together and in concert with Mr. Yohanek in the spending of Mrs. Storey's assets, while she was incompetent, for their separate purposes and in causing unauthorized gifts to be made . . . ."  The Plaintiff asked the trial court to set aside the unauthorized transfers made from Mrs. Storey's assets and require the Defendants to pay damages to the estate and to "disgorge their ill-gotten gains."

---

[5]For clarification, we note that, despite the complaint's heading listing tortious interference with inheritance as a claim, the Plaintiff's complaint did not actually allege this tort. Presumably this is because Tennessee does not recognize the tort of tortious interference with inheritance. *See Stewart v. Sewell*, 215 S.W.3d 815, 827 (Tenn. 2007).

[6]Generally, civil actions to recover assets taken from the decedent by fraud or deceit are exclusive to the person formally representing the estate, such as the executor or administrator, absent a "compelling showing" that such representation is not adequate. *See Ware v. McKeithan (In re Estate of Hendrickson)*, No. M2008-01332-COA-R9-CV, 2009 WL 499495, at *5-6 (Tenn. Ct. App. Feb. 25, 2009).  In this case, the Plaintiff urged the trial court to permit her to represent the estate in bringing this action, because Mr. Yohanek is a defendant and would not file such an action against himself.  The trial court granted this request.  The Defendants do not challenge the Plaintiff's standing on appeal.

In her capacity as a beneficiary of the estate, the Plaintiff alleged that the Defendants breached their fiduciary duties to Mrs. Storey's estate. Specifically, she argued that Mr. Yohanek, as the executor, breached his fiduciary duty to the estate by failing to properly administer the estate. She asserted that Mr. Yohanek (1) failed to include in the assets of the estate certain items of personal property that had been owned by Mrs. Storey, (2) concealed substantial funds from Mrs. Storey's accounts that had been given to Mrs. Storey's children in excess of his authority, (3) made false representations that Mrs. Storey had given jewelry to Mrs. Yohanek and their children, so consequently Mr. Yohanek failed to include this jewelry in the assets of the estate, (4) failed to account for his excessive withdrawals from Mrs. Storey's IRA and annuity accounts, and (5) filed untimely gift tax returns, which caused the estate to pay unnecessary penalties and interest, and thereby depleted the remaining cash in the estate.[7] The complaint did not describe any actions of Mrs. Yohanek and Mr. John G. Storey that constituted a breach of fiduciary duty to the estate, so it appeared that their claimed liability to the estate was based solely on their alleged conspiracy with Mr. Yohanek to breach his fiduciary duty to the estate.[8] As a result of this conduct, the Plaintiff alleged, the estate did not have sufficient funds from which to pay the Plaintiff her specific bequest of $150,000. Therefore, the Plaintiff argued, she is "entitled to recover a judgment against Mr. Yohanek, Mrs. Yohanek and Mr. [John G.] Storey, in order to replenish the Estate and to carry out the testamentary wishes of Mrs. Storey." She further alleged that Mr. Yohanek should be held liable to the estate for actual, consequential, and exemplary damages, and that he should be removed as executor of the estate without compensation.

On October 23, 2007, the Defendants filed a motion to dismiss or for a more definite statement. The motion to dismiss asserted lack of standing, lack of subject matter jurisdiction, and equitable estoppel. In addition, the Defendants argued that some of the claims in the Plaintiff's petition were barred by the applicable three-year statute of

---

[7]These actions are described in some detail in paragraph eighteen of the Plaintiff's complaint.

[8]This construction is based on a liberal reading of the complaint. The complaint does not assert a basis on which either Mrs. Yohanek or Mr. John G. Storey had a duty to Mrs. Storey's estate, nor does it identify any acts of these two Defendants taken after the death of the Decedent that are allegedly a breach of any such duty. While an executor owes the estate the duty to marshal and collect the assets of the estate within a reasonable time, to discharge his statutory duties in a timely manner, and to close the estate as quickly as possible, the beneficiaries of the estate do not have such duties. *See Estate of Doyle v. Hunt*, 60 S.W.3d 838, 844-45 (Tenn. Ct. App. 2001) (describing an executor's duties to the estate). Therefore, absent any allegation that Mrs. Yohanek or Mr. John G. Storey have a fiduciary duty to the estate, we read the Plaintiff's complaint as alleging that these two Defendants conspired with Mr. Yohanek in his breach of fiduciary duty to the estate.

limitations, contained in Tennessee Code Annotated § 28-3-105.[9] On April 8, 2008, the Plaintiff filed her first amended complaint, which was similar to the original complaint.

Discovery ensued. Depositions were taken, and documents were produced. On June 27, 2008, the Plaintiff filed a subpoena *duces tecum* for the records of Michael Koplon, M.D. ("Dr. Koplon"), Mrs. Storey's treating physician for a number of years prior to her death. The subpoena sought Mrs. Storey's medical records for the time period from 1998 through 2006. However, in response to the subpoena, only Mrs. Storey's records from the years 2004 through 2006 were produced; no records predating 2004 were produced. At that time, the Plaintiff did not make further efforts to obtain Mrs. Storey's records prior to 2004.

On March 19, 2009, Mr. Yohanek filed a petition with the trial court, seeking instructions as to the alleged gift of $652,000 made to the Plaintiff in 2001 that was the subject of one of the June 4, 2007 amended tax returns Mr. Yohanek filed on behalf of Mrs. Storey's estate. In his petition, Mr. Yohanek explained that, based on information obtained in the Plaintiff's deposition, it appeared that there was no longer a basis for filing the amended 2001 gift tax return. The Plaintiff objected, arguing that Mr. Yohanek's request for findings and instructions was unnecessary and was in reality an attempt to get the trial court to prejudge the case. On May 1, 2009, the trial court entered an order authorizing Mr. Yohanek to amend the 2001 gift tax return and request a refund to the estate of the gift tax paid.

On August 17, 2009, the Defendants filed a second motion to dismiss the Plaintiff's complaint and/or for partial summary judgment. The motion to dismiss asserted that (1) the Plaintiff did not have standing to file the complaint, (2) her claims were barred by the three-year statute of limitations in Section 28-3-105, (3) her claims were barred under the doctrine

_____

[9]Section 28-3-105 provides:

> The following actions shall be commenced within three (3) years from the accruing of the cause of action:
>
> > (1) Actions for injuries to personal or real property;
> >
> > (2) Actions for the detention or conversion of personal property; and
> >
> > (3) Civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability.

T.C.A. § 28-3-105 (2000).

of equitable estoppel, (4) the trial court did not have subject matter jurisdiction to hear the complaint, and (5) the complaint failed to state a claim for relief based on civil conspiracy.

The motion for partial summary judgment addressed some of the Plaintiff's claims against some of the Defendants. Specifically, the Defendants argued that summary judgment should be granted to Mrs. Yohanek and Mr. John G. Storey on the claim of undue influence, because the Plaintiff had no evidence indicating that either of these Defendants had a confidential relationship with Mrs. Storey. Similarly, as to the claim of breach of fiduciary duty, the Defendants sought summary judgment as to Mrs. Yohanek and Mr. John G. Storey because neither had a confidential relationship with Mrs. Storey, nor were they fiduciaries as to Mrs. Storey.[10] The Defendants sought summary judgment in favor of Mr. John G. Storey on the claim of conversion, because the Plaintiff had submitted no evidence to show that he appropriated any personal property of Mrs. Storey for his own use and benefit.[11] Finally, the Defendants made a "catch-all" motion for partial summary judgment, requesting that they be granted summary judgment on "any other theories of recovery" that may have been asserted against them in the Plaintiff's complaint.

Thus, the Defendants' motion sought either partial summary judgment or outright dismissal of the entire complaint. In support of the motion, the Defendants submitted a statement of undisputed material facts, along with affidavits by the Defendants. Each affidavit averred, *inter alia*, that Mrs. Storey "had the ability to manage her financial affairs, and did so until her death, with the exception of a brief period following her stroke in 2001, during which she relied on the assistance of [Larry G. Yohanek]." The affidavits asserted generally that all transactions or transfers were done at the request or direction of Mrs. Storey.

On September 1, 2009, the Plaintiff filed a response to the Defendants' motion. The Plaintiff argued that her claims should not be dismissed based on the three-year statute of limitations, because she did not discover the Defendants' wrongful acts until after her mother's death, and her complaint was filed within three years after her discovery of the wrongdoing. She further asserted that the civil conspiracy claims should not be dismissed, because her complaint as a whole established all of the elements of those claims. In response to the motion for partial summary judgment, the Plaintiff argued that genuine issues of material fact existed, and that the Defendants were not entitled to judgment as a matter of law. In support, the Plaintiff submitted her own affidavit, portions of deposition testimony of the Defendants,

----

[10]The Defendants did not specifically seek summary judgment in favor of Mr. Yohanek on the claims of undue influence or breach of fiduciary duty, either as Mrs. Storey's attorney in fact or as the executor of her estate.

[11]The Defendants did not seek summary judgment in favor of Mr. or Mrs. Yohanek on the conversion claim.

and exhibits to those depositions. The exhibits included copies of checks written by the Defendants after Mr. Yohanek was granted power of attorney, and ledger sheets itemizing Mrs. Storey's expenses during the relevant time period. In response to the Defendants' Statement of Undisputed Facts, the Plaintiff denied that her mother was capable of managing her own affairs after her stroke in 2001, and she claimed that Mr. Yohanek and Mrs. Yohanek "took total control of her affairs in March 2001."[12] The Plaintiff's affidavit referred to her response to the Defendants' Statement of Undisputed Facts. The Plaintiff asserted that Mrs. Yohanek had a confidential relationship with Mrs. Storey because Mrs. Yohanek was a signatory on Mrs. Storey's bank account. The Plaintiff submitted copies of checks and VISA statements showing many purchases by the Defendants between 2001 and 2003 that were for the Defendants' personal benefit, made with checks from Mrs. Storey's checking account or with Mrs. Storey's VISA card.

On September 23, 2009, the trial court heard oral argument from the parties on the motion to dismiss and/or for partial summary judgment.[13] The trial court took those motions under advisement. In the same hearing, the trial court also heard several motions in limine filed by the parties.

The day after the hearing, on September 24, 2009, the Defendants filed a motion in limine to exclude the medical records of Dr. Koplon. The Defendants pointed out that the Plaintiff had not designated Dr. Koplon or any other expert to testify as to Mrs. Storey's capacity, treatment, or condition. Therefore, they argued, the records of Dr. Koplon were not admissible because they were without foundation, they were not the best evidence of Mrs. Storey's capacity, and the probative value of those records was outweighed by their prejudicial effect.

### Trial Court's Decision

On November 13, 2009, the trial court issued a lengthy oral ruling on the Defendants' motion to dismiss and/or for partial summary judgment and on the motions in limine. The trial court's oral ruling was incorporated by reference into its written order.

The trial court granted in part and denied in part the Defendants' motion to dismiss or for partial summary judgment. As to the motion to dismiss, the trial court first denied the motion

---

[12]The Plaintiff's response did not include any of Mrs. Storey's medical records or any other medical evidence.

[13]A transcript of that hearing is not included in the appellate record.

on the grounds of standing, equitable estoppel, and subject matter jurisdiction.[14] It further held that the three-year statute of limitations in Section 28-3-105 was applicable to the claims brought by the Plaintiff as a personal representative for Mrs. Storey. The trial court reasoned that the cause of action began to accrue "when [Mrs. Storey] discovered or should have discovered the alleged wrongful acts." Because the Plaintiff offered no proof regarding when Mrs. Storey learned or received any notice of any wrongful acts, the trial court held that "the three-year statute of limitations began at the earliest point prior to [Mrs. Storey's] death . . . . This point would have been three years before her death or March 4, 2003." Therefore, the trial court held, the Plaintiff's claims were limited to allegedly wrongful conduct that occurred after March 4, 2003, three years before the day Mrs. Storey died. The trial court added that "all the alleged wrongful acts that occurred after the decedent's death fall within the three-year statute of limitation as alleged and admitted by the parties."

The trial court next addressed the Defendants' motion for partial summary judgment. Initially, the trial court found that, for purposes of the motion, there were no material facts in dispute. With respect to Plaintiff's claim of undue influence, the trial court held that the Plaintiff was required to show that each of the Defendants had a confidential relationship with Mrs. Storey. Because the Plaintiff did not submit sufficient evidence to establish that either Mrs. Yohanek or Mr. John G. Storey had a confidential relationship with Mrs. Storey, the trial court granted summary judgment in favor of these Defendants on the claim of undue influence.[15]

The trial court also granted summary judgment in favor of all of the Defendants on the Plaintiff's claim that they breached their fiduciary duties to Mrs. Storey during her lifetime.

---

[14]The Defendants argued that the probate court lacked subject matter jurisdiction to adjudicate the tort claims brought by the Plaintiff. The subject matter jurisdiction of the probate court was not raised as an issue on appeal, but we must be satisfied that such subject matter jurisdiction exists. The probate court is a court of limited jurisdiction and does not ordinarily have jurisdiction over tort claims. *See Wiley v. Williams*, No. E2005-02518-COA-R3-CV, 2006 WL 929264, at *5 (Tenn. Ct. App. Apr. 10, 2006); *Cannon v. Collier*, No. 88-76-II, 1988 WL 85356, at *1 (Tenn. Ct. App. Aug. 17, 1988). In this case, however, the Plaintiff stands in the shoes of the executor for the claims brought as a personal representative for the estate in an effort to marshal and collect assets of the estate. *See Ware*, 2009 WL 499495, at *5. The remaining claims were brought by the Plaintiff in her capacity as a beneficiary of the estate for the Defendants' breach of their fiduciary duty to the estate. The probate court has the power to address such claims. *See* T.C.A. § 16-16-107 (2009); *but see Roll v. Edwards*, 805 N.E.2d 162, 168 (Ohio Ct. App. 2004) (finding that the probate court lacked jurisdiction over a claim for "intentional interference with inheritance").

[15]Though the Defendants did not seek summary judgment on the undue influence claim as to Mr. Yohanek, the trial court noted that Mr. Yohanek's status as Mrs. Storey's attorney in fact, coupled with other circumstances, established a presumption of undue influence and defeated summary judgment as to Mr. Yohanek. The Plaintiff has since voluntarily dismissed the undue influence claims against Mr. Yohanek.

-10-

As to Mrs. Yohanek and Mr. John G. Storey, the trial court held that summary judgment was proper because, again, the Plaintiff proffered insufficient evidence of a confidential or other fiduciary relationship existed between Mrs. Storey and either of those Defendants. As to Mr. Yohanek, the trial court recognized that he had a fiduciary responsibility as Mrs. Storey's attorney in fact, but noted that the Defendants' affidavits all asserted that, except during a short period after her stroke, Mrs. Storey was capable of managing her financial affairs. Finding that the Plaintiff offered no evidence to rebut this claim, *i.e.*, evidence showing that Mrs. Storey was *not* capable of managing her own affairs, summary judgment was granted to Mr. Yohanek on this breach of fiduciary duty claim as well. The trial court did not address the claim brought by the Plaintiff, as a beneficiary, against Mr. Yohanek, as the executor of the estate, based on his alleged breach of fiduciary duty in the administration of Mrs. Storey's estate.

With respect to conversion, the trial court granted summary judgment in favor of Mr. Yohanek and Mr. John G. Storey, because the evidence submitted by the Defendants negated elements of the claim of conversion, and because the Plaintiff did not submit sufficient evidence to prove the elements of her claim. The trial court indicated that Mrs. Yohanek could not be held to have converted funds from Mrs. Storey's checking account, because Mrs. Yohanek was a signatory on that account, and "[s]he could not have converted her own funds." However, the trial court denied summary judgment to Mrs. Yohanek on the conversion claim to the extent that Mrs. Yohanek used Mrs. Storey's VISA credit card after Mrs. Storey's death.[16]

Although the Defendants asserted all of the conspiracy claims should have been dismissed on the face of the complaint, the trial court dismissed the claim for a different reason. It granted the Defendants summary judgment on the allegations of conspiracy because the Plaintiff offered no proof that the Defendants acted in concert together to accomplish any of the allegedly unlawful acts.

Finally, the trial court ruled on the pending motions in limine. Pertinent to this appeal, the trial court granted the Defendants' motion to exclude Dr. Koplan's medical records.

Thus, the trial court (1) dismissed all causes of action based on alleged wrongful acts of the Defendants occurring prior to March 4, 2003, pursuant to Section 28-3-105; (2) granted summary judgment in favor of Mr. Yohanek on claims of breach of fiduciary duty as Mrs. Storey's attorney in fact, conversion, and civil conspiracy, but declined to grant summary

---

[16]The trial court did not explicitly grant summary judgment in favor of Mrs. Yohanek on the conversion claim as it related to the checks Mrs. Yohanek wrote from her joint checking account with the decedent, but this ruling could be implied from the totality of the court's decision.

judgment in favor of Mr. Yohanek on the claim of undue influence; (3) granted summary judgment in favor of Mrs. Yohanek on the claims of breach of fiduciary duty, undue influence, and civil conspiracy, but denied summary judgment in favor of Mrs. Yohanek on the claim of conversion as to charges made to Mrs. Storey's VISA credit card after Mrs. Storey's death; (4) granted summary judgment in favor of Mr. John G. Storey on all claims for relief; and (5) excluded from trial Dr. Koplon's medical records on Mrs. Storey.

On December 16, 2009, the trial court entered its written order incorporating the oral ruling by reference. The trial court certified the order as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

### Plaintiff's Motion to Alter or Amend and Motion to Compel Production

On January 14, 2010, the Plaintiff filed two motions, a motion to alter or amend or to set aside the December 16, 2009 judgment pursuant to Rules 59 and 60 of the Tennessee Rules of Civil Procedure, and also a motion to compel production of medical records of Dr. Koplon. The basis of the Plaintiff's motion to alter or amend or set aside was her contention that she had "located additional facts calling into question whether the Deceased's mental competence existed at the time of the transfers . . . ." She indicated that some of Dr. Koplon's medical records regarding Mrs. Storey's physical and mental condition had been withheld from her during discovery. She sought relief from the trial court's judgment in order to obtain those records on the presumption that they would establish Mrs. Storey's incompetency and thus show that the three-year statute of limitations should have been tolled during Mrs. Storey's incompetence. Even if Mrs. Storey were not found to have been incompetent, the Plaintiff asserted, the three-year statute of limitations should have been tolled as to the 1999 gift of $150,000 to Mrs. Yohanek, because that gift was fraudulently concealed until Mrs. Storey's death.[17] The Plaintiff also argued that the trial court erred in concluding that Mrs. Yohanek could not be held liable for conversion of the funds in Mrs. Storey's bank account because she was a signatory on Mrs. Storey's account.

In support of her motions, the Plaintiff submitted the medical records of Dr. Koplon that had previously been produced in discovery, namely, Mrs. Storey's medical records from 2004 until Mrs. Storey's death on March 4, 2006. The medical records included statements

---

[17]The Defendants assert that the Plaintiff made this argument only after the trial court ruled against the Plaintiff on tolling based on Mrs. Storey's alleged incapacity. The record is unclear on this point. In any event, it is clear that fraudulent concealment was argued after the hearing on the motion for summary judgment.

indicating that Mrs. Storey suffered from "multiple chronic problems," including Alzheimers or dementia, congestive heart failure, severe COPD,[18] depression, and hypothyroidism.

The Plaintiff also submitted her own affidavit, in which she averred that, although she had previously subpoenaed Dr. Koplon's medical records on Mrs. Storey dating back to 1998, Dr. Koplon produced only records from 2004 forward. The Plaintiff asserted that, after the hearing on the Defendants' motion to dismiss and/or for partial summary judgment, she again subpoenaed Dr. Koplon's pre-2004 records, and in response received only records from 2001; she received none for 2002 or 2003. The missing medical records, the Plaintiff argued, would have enabled her to establish that Mrs. Storey did not have the capacity to make decisions for herself and that she was dominated by the Defendants, a necessary element of her claims.

On February 10, 2010, the trial court conducted a hearing on the Plaintiff's motions.[19] At the conclusion of the hearing, it took the motions under advisement.

On March 16, 2010, the trial court issued an oral ruling denying the Plaintiff's motions to alter or amend and to compel the production of documents. To determine whether to consider the Plaintiff's newly submitted evidence, the trial court applied the factors identified in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000). It noted that the medical records of Dr. Koplon were subpoenaed in June 2008, found that the pre-2004 medical records would have been discoverable through due diligence, and held that the Plaintiff offered no excuse that justified her failure to seek an order to compel the production of the records at an earlier time.

The trial court rejected the Plaintiff's argument that the statute of limitations should be tolled based on Mrs. Storey's lack of capacity or based on fraudulent concealment. It found that these arguments were not raised prior to the hearing on the summary judgment motion, so the trial court declined to consider them in the context of the motion to alter or amend. The trial court also declined to alter or amend its conclusion that Mrs. Yohanek could not be held liable for conversion of the funds in Mrs. Storey's bank account. In light of its decision to deny the motion to alter or amend, the trial court also denied the Plaintiff's motion to compel discovery. On March 17, 2010, the trial court entered a written order denying the Plaintiff's motions, incorporating by reference her oral ruling to that effect.

---

[18]Chronic obstructive pulmonary disease.

[19]A transcript of that hearing is not included in the appellate record.

**Proceedings After Notice of Appeal**

On March 19, 2010, the Plaintiff filed a timely notice of appeal from two orders, the trial court's December 16, 2009 order granting partial summary judgment and its March 17, 2010 order denying her motions to alter or amend and her motion to compel.

Subsequently, this Court, *sua sponte*, raised the issue of whether the trial court's December 16, 2009 order had been improvidently certified as final under Tennessee Rules of Civil Procedure 54.02. This Court entered an order directing the Plaintiff to show cause why the appeal should not be dismissed for failure to appeal a final order or judgment. In the order, the appellate court recognized that the trial court's December 16, 2009 order was certified as final pursuant to Rule 54.02, but noted that Rule 54.02 provides that a trial court may direct the entry of final judgment "as to one or more but fewer than all of the claims or parties." Where a claim for relief, based on an aggregate set of operative facts, is pursued based on more than the legal theory, the appellate court noted that certification is not appropriate when the trial court has held that the claimant is not entitled to relief under one legal theory, but a claim arising out of the same aggregate of operative facts under another legal theory remains in the case. Similarly, Rule 54.02 certification is not appropriate where the issues that are declared "final and appealable" are "inextricably linked with the remaining issues not yet decided. Piece-meal appeals are not favored." *Crane v. Sullivan*, No. 01A01-9207-CH-00287, 1993 WL 15154, at *2 (Tenn. Ct. App. Jan. 27, 1993); *see also Christus Gardens, Inc. v. Baker, Donelson, Bearman*, No. M2007-01104-COA-R3-CV, 2008 WL 3833613, at *4-5 (Tenn. Ct. App. Aug. 15, 2008).

In response to the appellate court's show cause order, in order to eliminate any "remaining issues not yet decided" and thereby resolve any question as to appellate jurisdiction, the Plaintiff filed in the trial court a notice of voluntary dismissal of the claims remaining against the Defendants for their conduct prior to Mrs. Storey's death. In the notice of voluntary dismissal, the Plaintiff defined the remaining claims as (1) a claim against Mr. Yohanek for undue influence exercised against Eloise Storey after March 4, 2003, until her death (March 4, 2006), and (2) a claim against Mrs. Yohanek for conversion commencing March 4, 2003. In the notice, the Plaintiff stated: "Pursuant to this Notice of Voluntary Non-Suit, there will be no remaining claims asserted by the Plaintiff that were not finally disposed of by the Court in its Order Granting Summary Judgment entered December 16, 2009." The trial court then entered an order dismissing those claims in accordance with the Plaintiff's notice of voluntary non-suit. On February 10, 2011, the Plaintiff filed copies of the these pleadings in this Court to demonstrate that all remaining claims have been dismissed, and that the December 16, 2009 order is final as certified, and that appellate review of this decision is proper.

From these pleadings, it appears that all of the claims brought by the Plaintiff against the Defendants, except for her claims against Mr. Yohanek in his capacity as executor of the estate, have been resolved, and that the claims being appealed are not intertwined with the issues remaining to be decided in the trial court.[20] Therefore, Rule 54.02 certification is proper, and we have jurisdiction to hear the issues on appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Plaintiff raises several issues:

1. Did the trial court commit error when it granted the Defendants' motion for partial summary judgment dismissing the Plaintiff's claims against the Defendants based upon the Defendants' "conclusory" assertions?

2. Did the trial court commit error when it refused to find that the running of the three year statute of limitations had been tolled either (a) during the period of the Decedent's disability or (b) during the time that actions of the Defendants had been concealed by the Defendants?

3. Did the trial court commit error when it ruled that the three-year statute of limitations set forth in Section 28-3-105 should be applied retroactively from the Decedent's date of death, rather than from the date the Plaintiff knew or should have known the facts upon which her claims were based?

4. Did the trial court commit error when it dismissed the Plaintiff's claims that the Defendants had exercised undue influence over the Decedent during her lifetime in the transfers of property of the Decedent to themselves?

5. Did the trial court commit error when it dismissed the Plaintiff's claims that the Defendants had converted property of the Decedent during her lifetime for their own benefit?

6. Did the trial court commit error when it dismissed the Plaintiff's claims that Mr. Yohanek had breached fiduciary duties to the Decedent following his appointment as her attorney in fact?

7. Did the trial court commit error when it denied the Plaintiff's motion to alter or amend?

---

[20]As noted above, the trial court did not address in its oral or written ruling the claim against Mr. Yohanek for breach of his fiduciary duties as the executor of the estate. Therefore, as we will discuss below, this claim has not been adjudicated, and it is still pending before the trial court. Nevertheless, this claim is severable from the other claims brought by the Plaintiff, and the fact that it remains for adjudication does not prevent the decision on appeal from being a final, appealable order.

8. Did the trial court commit error when it refused to grant the Plaintiff's motion to compel discovery of medical information?

We will first consider the trial court's ruling on the Defendants' motion to dismiss and/or for partial summary judgment, and then we will consider the trial court's denial of the Plaintiff's motion to alter or amend.

The trial court's decision to grant or deny a motion for summary judgment is a question of law, which we review *de novo* on the record, with no presumption of correctness in the trial court's decision. A grant of summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

In *Hannan*, the Tennessee Supreme Court outlined a new burden-shifting analysis for a trial court to employ when faced with a motion for summary judgment.[21] After *Hannan*, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8. Rather, the moving party must "either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense." *Id.* (quoting *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000)). This analysis was recently summarized by the Tennessee Supreme Court:

> The party seeking the summary judgment has the ultimate burden of persuading the court "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Byrd*, 847 S.W.2d at 215. If that motion is properly supported, then the burden of production to establish a genuine issue of material fact shifts to the non-moving party. *Hannan*, 270 S.W.3d at 5. In order to shift the burden of production, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the non-moving party cannot establish an essential element of his claim at trial. *Id.* at 8-9. The court must accept the facts presented by the nonmovant as true and resolve any doubts regarding the existence of genuine issue of material fact in the nonmovant's

---

[21]Tennessee's General Assembly recently enacted a law that legislatively reverses the Tennessee Supreme Court's holding in *Hannan*, with the intent to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*. *See* SB 1114/HB 1358, adding T.C.A. § 20-16-101, expected to take effect July 1, 2011 (pending Governor's signature). In this appeal, we apply the summary judgment standard in effect at the time of the trial court decision below, that is, the *Hannan* standard.

favor. ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008). At the summary judgment phase, "it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact." ***Id.*** at 87 (citing ***Byrd***, 847 S.W.2d at 211).

***Estate of French v. Stratford House***, 333 S.W.3d 546, 553-54 (Tenn. 2011).

The mental gymnastics required for summary judgment analysis can become even more challenging if the moving party has the ultimate burden of proof on the issue that is the subject of the summary judgment motion:

> The burden-shifting analysis differs if the moving party bears the burden of proof at trial. ***Hannan***, 270 S.W.3d at 9 n.6. "For example, a plaintiff who files a motion for partial summary judgment for an element of his or her claim shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law." ***Id.*** n.6. "Similarly, a defendant asserting an affirmative defense . . . shifts the burden of production by alleging undisputed facts that show the existence of the affirmative defense." ***Id.*** n.6.

***Fortune v. Unum Life Ins. Co. of Am.***, No. W2009-01395-COA-R3-CV, 2010 WL 3984705, at *3 (Tenn. Ct. App. Oct. 12, 2010), *perm. app. den.* (Tenn. Apr. 14, 2011).

> Regardless of which party has the burden of proof, this Court has cautioned:
>
> A party will not succeed on a motion for summary judgment merely by asserting that the non-moving party is without evidence to support its claim. ***Martin***, 271 S.W.3d at 83-84 (citing ***Byrd***, 847 S.W.2d at 215). "The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." ***Id.*** at 84 (citing ***Hannan***, 270 S.W.3d at 5). Production of evidence raising doubts about the merits of the non-moving party's claim will not suffice. ***Id.*** (citing ***McCarley*** [v. ***Quality Food Serv.***, 960 S.W.2d 585, 588 (Tenn. 1988)] "[T]he moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." ***Id.*** (citing ***Blair*** [v. ***Town Hall***, 130 S.W.3d 761, 768 (Tenn. 2004)]. If the moving party does not carry its initial burden, the nonmoving party has no obligation to produce evidentiary materials in support

of its position. *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Staples*, 15 S.W.3d at 88).

*Id*. Thus, a defendant who relies on an affirmative defense in a summary judgment motion must point to undisputed facts that establish the defense. In the absence of an affirmative defense, the defendant who seeks summary judgment must essentially prove a negative, that is, disprove an essential element of the plaintiff's claim.

Generally, there are four methods by which the nonmoving party can satisfy its burden of production and defeat a motion for summary judgment:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party;
> (2) rehabilitating the evidence attacked by the moving party;
> (3) producing additional evidence establishing the existence of a genuine issue for trial; or
> (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley v. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1988) (quoting *Byrd*, 847 S.W.2d at 215 n.6).

Within this framework, we must review the evidence presented and determine whether genuine issues of material fact exist, and whether the Defendants were entitled to a judgment as a matter of law.[22] As set forth below, this case illustrates the difference in the resolution of a summary judgment motion that can result from application of the summary judgment standard adopted in *Hannan* and its progeny.

ANALYSIS

**Claims at Issue on Appeal**

In her complaint, the Plaintiff has sought relief in two capacities – first, in her capacity as a personal representative for the estate, and second, on her own behalf in her capacity as a

---

[22]The Defendants' motion was styled as a "Motion to Dismiss and Motion for Partial Summary Judgment." It is unclear in the record whether the issue involving the statute of limitations was argued by the Defendants as part of their motion to dismiss or their motion for summary judgment. Regardless, the trial court properly decided this issue by considering evidence outside of the pleadings, so we will review this issue on appeal as part of the summary judgment motion.

beneficiary under the will. The Plaintiff's claims filed on behalf of the estate were based on undue influence, breach of fiduciary duty, conversion, and civil conspiracy for wrongful acts committed during Mrs. Storey's lifetime. The claims filed by the Plaintiff on her own behalf were based on Mr. Yohanek's breach of his fiduciary duty to the estate, and based on all of the Defendants' conspiracy for Mr. Yohanek to achieve this purpose. Therefore, the Plaintiff has asserted two separate and distinct breach of fiduciary duty claims against Mr. Yohanek.

The Defendants' motion to dismiss did not request that Mr. Yohanek, as the executor of the estate, be granted summary judgment on the claim that he breached his fiduciary duty to the estate through the improper administration of the estate.[23] Perhaps for this reason, the trial court did not address in its oral or written ruling this claim against Mr. Yohanek for breach of his fiduciary duty to the estate in the administration thereof. The trial court's written order states that summary judgment is granted in favor of Mr. Yohanek "as to all causes of action based on Breach of Fiduciary Duty." This language is broad, and both parties on appeal have understandably interpreted this to include dismissal of the claim against Mr. Yohanek for the breach of his fiduciary duty in the administration of Mrs. Storey's estate.

Nevertheless, we note that the trial court's written order attaches and incorporates by reference its lengthy oral ruling. In its oral ruling, the trial court does not address the breach of fiduciary duty claim against Mr. Yohanek for his actions as the executor of Mrs. Storey's estate. The trial court specifically held that the statute of limitations did not bar the claims against the Defendants arising out of Mr. Yohanek's conduct as the estate's executor. To determine the parameters of the trial court's written order, we must consider the oral ruling, particularly since it was given legal effect when it was incorporated into the written order by specific reference.[24] *See City of Newport v. Masengill Auction Co.*, 19 S.W.3d 789, 795-96 (Tenn. Ct. App. 1999) (recognizing the well-established principle that a court speaks only through its written judgments). In light of the oral ruling, incorporated into the written order, we interpret the trial court's order as granting summary judgment to Mr. Yohanek only as to the breach of fiduciary duty claims arising out of his actions as Mrs. Storey's attorney in fact, asserted by the Plaintiff in her capacity as Mrs. Storey's personal representative. Summary judgment was not granted as to the Plaintiff's claims, brought on her own behalf as a beneficiary, against Mr. Yohanek for his breach of fiduciary duty in the administration of the

---

[23] The trial court granted summary judgment in favor of the Defendants on all of the claims for civil conspiracy, including the claims brought by the Plaintiff, as a beneficiary, against the Defendants for their conspiracy to cause Mr. Yohanek to breach his fiduciary duty to the estate.

[24] We note that the transcript of the oral ruling attached to the trial court's written order contains handwritten corrections by the trial judge, indicating that she carefully reviewed the transcript to ensure that it accurately reflected her ruling.

estate. Therefore, that claim remains pending before the trial court below, and it is not at issue in this appeal.

## Statute of Limitations

It is undisputed that the statute of limitations applicable to all of the Plaintiffs' claims is the three-year statute of limitations found at Tennessee Code Annotated § 28-3-105. By the terms of the statute, a plaintiff's claim for relief must be commenced "within three (3) years from the accruing of the cause of action." The disputes on appeal center on when the "accruing of the cause of action" begins, and whether, in any event, the statute of limitations was tolled by Mrs. Storey's incompetence or the Defendants' fraudulent concealment of their wrongful acts. We will address these issues in turn.

### *Discovery Rule*

On appeal, the Plaintiff argues that the trial court erred in granting partial summary judgment in favor of the Defendants based on its finding that the Plaintiff did not submit sufficient evidence regarding when Mrs. Storey discovered, or should have discovered, the Defendants' wrongful conduct.

In their motion for partial summary judgment, the Defendants argued that the statute of limitations began to accrue when the alleged unlawful acts occurred. Based on this premise, they argued that the Plaintiff's action was time-barred insofar as it was based on alleged wrongful acts that occurred prior to September 10, 2004, *i.e.*, three years before the complaint was filed. In response, the Plaintiff asserted that the statute did not begin to accrue until she, the Plaintiff, discovered, or should have discovered, the Defendants' wrongful acts. The Plaintiff claimed that she "did not discover the wrongful acts of the Defendants until after the death of her mother on March 4, 2006, and until after her Estate was opened on March 30, 2006." Therefore, the Plaintiff argued, under the discovery rule, the statute of limitations began to accrue on either March 4, 2006, or March 30, 2006, and none of the claims in her September 2007 petition was time-barred.

The trial court disagreed with the positions taken by both the Plaintiff and the Defendants. As an initial matter, the trial court found that, because the Plaintiff's claims were brought on behalf of the estate, the three-year statute of limitations would begin to accrue, not when *the Plaintiff* discovered or should have discovered the wrongful acts, but "when *the decedent* discovered or should have discovered the alleged wrongful acts." The trial court explained:

> Because the plaintiff offered no proof regarding when the decedent learned or
> received any notice of any wrongful acts, the three-year statute of limitations

began at the earliest point prior to her death when this action could have been brought without proving lack of notice. This point would have been three years before her death or March 4, 2003. . . . Further, there have been no facts alleged or arguments made regarding if and when the decedent discovered or should have discovered the alleged wrongful acts.

Therefore, the Court holds that this cause is limited to those acts that fall within three years prior to the decedent's date of death.

On this basis, the trial court dismissed the claims that were based on conduct occurring prior to March 4, 2003, three years prior to the Decedent's death.

Section 28-3-105 provides that a plaintiff's claim must be commenced "within three (3) years from the accruing of the cause of action." Thus, the critical issue in such a case is when the cause of action accrued. *Prescott v. Adams*, 627 S.W.2d 134, 138 (Tenn. Ct. App. 1981). This Court has defined the phrase "from the accruing of the cause of action" to mean "from the time when the plaintiff knew or reasonably should have known that a cause of action existed." *Id.* (quoting *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976)); *Johnson v. Craycraft*, 914 S.W.2d 506, 511 (Tenn. Ct. App. 1995) (same). This is essentially a restatement of the discovery rule, under which "a cause of action accrues and the statute of limitations begins to run 'when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.' " *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 (Tenn. 2001) (quoting *Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)). Under the application of the discovery rule, the statute of limitations is tolled during the period of time in which the plaintiff has no actual knowledge of the injury and, as a reasonable person, would not be placed on inquiry notice. *Levine v March*, 266 S.W.3d 426, 435 (Tenn. Ct. App. 2007) (citing *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680–81 (Tenn. 1990)). "The issue of accrual of a cause of action is basically a question of fact for the trier of fact." *Johnson*, 914 S.W.2d at 511-12.

In this case, we must first address the question of who is "the plaintiff" for purposes of applying the discovery rule. In their motion for partial summary judgment, the Defendants presumed that the knowledge (or lack thereof) of Mrs. Storey was the relevant issue; in her response, the Plaintiff presumed that the relevant inquiry was when *she herself* had knowledge of the Defendants' wrongdoing. The Plaintiff has cited no authority to support this position. In this case, all of the claims governed by Section 28-3-105 are the claims brought by the Plaintiff as representative of the estate, standing in the stead of her mother, Mrs. Storey. Because the claims belong to Mrs. Storey, and not to the Plaintiff, we agree

with the Defendants that the focus of inquiry under the discovery rule must be the knowledge (or lack thereof) of Mrs. Storey, not the knowledge of the Plaintiff.[25]

With this in mind, we must determine whether the Defendants submitted sufficient evidence to prevail on their motion for partial summary judgment on the statute of limitations defense. When a defendant files a motion for summary judgment based on an affirmative defense, the defendant must "conclusively establish [the] affirmative defense." *McMahan v. Sevier County*, No. E2005-02028-COA-R3-CV, 2007 WL 1946650, at *2 (Tenn. Ct. App. July 3, 2007) (quoting *McCarley*, 960 S.W.2d at 588). When the affirmative defense is based on a statute of limitations, and the plaintiff relies on the discovery rule in response to the motion, the burden remains on the defendant to show "that the plaintiff discovered, or should have discovered, . . . that he or she was injured as a result of the wrongful conduct of another" at a time that places the plaintiff beyond the limitations period. *Id.* at *3. This Court has explained:

> In a summary judgment case, when the plaintiff puts the discovery rule at issue in response to the defendant's assertion of the statute of limitations as a bar to the plaintiff's claim, the burden remains on the moving party to prove the affirmative of its defense, *i.e.*, that the plaintiff discovered, or should have discovered, more than one year prior to the commencement of the action, that he or she was injured as a result of the wrongful conduct of another. . . .
>
> In the summary judgment analysis, the initial focus is on the material upon which the moving party relies. Hence, in the instant case, the defendants must demonstrate, by way of verified testimony and/or authenticated documents, all of which must be admissible at trial, that more than one year prior to the filing of suit, the plaintiff was "aware of facts sufficient to put a reasonable person on notice that he [or she] ha[d] suffered an injury as a result of wrongful conduct." *Stanbury* [*v. Bacardi*, 953 S.W.2d 671, 678 (Tenn. 1997)] (quoting *Roe* [*v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)]). Unless and until the defendant does this, the plaintiff is not required to show that he or she was not chargeable with knowledge of such facts.

*Id.* at *3-4 (citing *McCarley*, 960 S.W.2d at 587-88); *see also Fortune*, 2010 WL 3984705, at *3. Therefore, under the burden-shifting framework for summary judgment analysis, the

---

[25]By analogy, where one suffers personal injuries that later result in death, the statute of limitations begins to run from the date of the injury, not the date of death. *See Fowykes v. Nashville & Decatur R.R. Co.*, 56 Tenn. 829, 1876 WL 7247, at *1 (Tenn. 1876); *Holliman v. McGrew*, 2009 WL 302276, at *5 (Tenn. Ct. App. Feb. 5, 2009).

burden is on the Defendants to negate the Plaintiff's claim that the discovery rule tolls the applicable statute of limitations.

Moreover, in this case, the "discovery" of Mrs. Storey must be shown in the context of Mr. Yohanek's duty as to her as a fiduciary. As Mrs. Storey's fiduciary, Mr. Yohanek had an affirmative duty to inform her of all matters pertaining to the fiduciary relationship.[26] This would of course include all material facts regarding expenditures of Mrs. Storey's money or assets by Mr. Yohanek or any of the Defendants to benefit someone other than Mrs. Storey. Moreover, to the extent that the Defendants would seek to show when Mrs. Storey reasonably should have known that she was injured as a result of wrongful conduct, this, too, must be ascertained in the context of Mr. Yohanek's fiduciary duty to Mrs. Storey. The trust and confidence placed in the fiduciary, coupled with the fiduciary's failure to disclose, may prevent the discovery of the cause of action. *See Hagney v. Lopeman*, 590 N.E.2d 466, 469 (Ill. 1992). "Facts which might ordinarily require investigation may not excite suspicion where a fiduciary relationship is involved." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). Thus, the determination of when Mrs. Storey reasonably should have known must factor in her trust and confidence in her fiduciary, Mr. Yohanek.

Against this backdrop, we consider "the material upon which" the Defendants relied in demonstrating when Mrs. Storey knew or should have known about their allegedly wrongful acts. *McMahan*, 2007 WL 1946650, at *3-4. To support their motion for partial summary judgment, the Defendants submitted their own affidavits in which they asserted that Mrs. Storey had the ability to manage her own financial affairs and did so until her death. They also asserted generally that their actions with respect to Mrs. Storey's bank accounts, credit cards, and assets were done at Mrs. Storey's direction or request. For example, in Mr. Yohanek's affidavit, he states that he never used Mrs. Storey's bank accounts or VISA "unless at the request of Eloise J. Storey," and that all actions taken by him with respect to the disposition of her assets "were at her direction or request." The affidavits of Mrs. Yohanek and Mr. John G. Storey state similarly that any actions taken with respect to their mother's bank account, VISA, and other assets "were at [Mrs. Storey's] direction or request."

This evidence falls far short of establishing when Mrs. Storey knew or should have known about each of the alleged wrongful acts of the Defendants. The undisputed facts show that Mr. Yohanek assisted Mrs. Storey with her business affairs at least since 1998. After her

---

[26]We note that the fiduciary's "failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent injury or escape investigation." *Ralston v. Hobbs*, 306 S.W.3d 213, 223-24 (Tenn. Ct. App. 2009). Once the fiduciary relationship arises, "there exists a duty to speak . . .[and] mere silence constitutes fraudulent concealment." *Shadrick v. Coker*, 963 S.W.2d 726, 763 (Tenn. 1998).

strokes in 2001, she was physically compromised, forced to rely on others for many aspects of her daily care. The alleged wrongful acts of the Defendants took place over a number of years. The general assertions in the Defendants' affidavits regarding "[a]ny actions taken" with respect to Mrs. Storey's assets are both broad and vague; they do not constitute probative evidence of Mrs. Storey's knowledge about the particular transactions at issue, or whether she should have had knowledge of those transactions. In addition, they do not address Mr. Yohanek's disclosure as Mrs. Storey's fiduciary of all material facts surrounding each transaction. The "[p]roduction of evidence raising doubts about the merits of the nonmoving party's claim will not suffice." *Fortune*, 2010 WL 3984705, at *3. The Defendants had the burden to show that Mrs. Storey was "aware of facts sufficient to put a reasonable person on notice that he [or she] ha[d] suffered an injury as a result of wrongful conduct" with respect to the specific transactions at issue, and in the context of the fiduciary relationship. *McMahan*, 2007 WL 1946650, at *4 (citation omitted). The evidence submitted by the Defendants does not satisfy this burden.

Because the Defendants did not satisfy their burden of proving that they were entitled to summary judgment on their statute of limitations defense, the Plaintiff was not required to submit evidence that Mrs. Storey did *not* have sufficient knowledge of the relevant facts. *Id.*; *Fortune*, 2010 WL 3984705, at *3 ("If the moving party does not carry its initial burden, the nonmoving party has no obligation to produce evidentiary materials in support of its position."). Therefore, it was error for the trial court grant summary judgment in favor of the Defendants based on the Plaintiff's failure to show when Mrs. Storey had knowledge of the Defendants' wrongful acts. *See McCarley*, 960 S.W.2d at 588.

Furthermore, Section 28-3-105 provides that the Plaintiff's action "shall be commenced" within three years of accrual; thus, the limitations period is three years prior to the day on which the action is "commenced." The trial court below used the date of Mrs. Storey's death as the operative date from which to measure the three-year statute of limitations, but there is no authority for using this date to determine the limitation period. Under the plain language of the statute, the operative date for determining whether a claim is time-barred is the date on which the complaint is filed. Therefore, we must conclude that the trial court erred in using the date of Mrs. Storey's death as the reference point to determine which claims are barred by the statute of limitations.

For all of these reasons, the grant of summary judgment on the basis of the statute of limitations must be reversed.

*Tolling*

### a. Incapacity or "Unsound Mind" - T.C.A. § 28-1-106

The Plaintiff claims that Mrs. Storey was mentally and physically disabled from the time she suffered a massive stroke in early 2001, and that, after her stroke, Mr. Yohanek took and retained complete control of Mrs. Storey's affairs. Consequently, she argues, the trial court should have found that the three-year statute of limitations was tolled until the date of her death,[27] because Mrs. Storey was "of unsound mind" pursuant to Tennessee Code Annotated § 28-1-106. That statute provides:

> If the person entitled to commence an action is, at the time the cause of action accrued, either under the age of eighteen (18) years, or *of unsound mind*, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

T.C.A. § 28-1-106 (2000) (emphasis added). Thus, this statute permits the tolling of an applicable statute of limitations during the time in which a claimant is "of unsound mind." The statute, however, does not define the term.[28] The Plaintiff argues that, after her stroke, Mrs. Storey was "of unsound mind," and so the three-year statute of limitations should have been tolled for the duration of her disability.[29]

In response, the Defendants point out that the Plaintiff did not make this argument to the trial court in response to their motion for partial summary judgment; rather, the argument was first raised in the Plaintiff's motion to alter or amend. Therefore, they claim, the trial court did not err in failing to apply the tolling provision in Section 28-1-106. In the alternative, the

---

[27]The death of a legally disabled person removes the disability, and the statute of limitations begins to run at that time. *See Collier v. MLG&W*, 657 S.W.2d 771, 774 (Tenn. Ct. App. 1983).

[28]On April 6, 2011, the Tennessee Legislature enacted an amendment to this statute, deleting the phrase "of unsound mind" and was replacing with "adjudicated incompetent." In the same amendment, the phrase "the removal of such disability" was replaced with "legal rights are restored," and "removal of such disability" was replaced with "restoration of legal rights." *See* Tenn. Laws Pub. Ch. 47 (S.B. 850) (2011). The amendments to the statute are not applicable to this case, and they are not part of our analysis.

[29]We note that, shortly after oral argument in this appeal, the Tennessee Supreme Court issued its opinion in *Sherrill v. Souder*, in which the Court discussed at length the meaning of the phrase "of unsound mind," for the purpose of tolling the applicable statute of limitations. *See Sherrill v. Souder*, 325 S.W.3d 584, 599-603 (Tenn. 2010).

Defendants argue, Mrs. Storey is legally presumed to be competent, the Defendants submitted affidavits to that effect, and the Plaintiff did not present any factual or evidentiary basis from which the trial court could have found that Mrs. Storey was incapable of managing her financial affairs.

From our review of the record, we agree with the Defendants that the Plaintiff did not raise this argument to the trial court in her response to the Defendants' motion for partial summary judgment. In response to the Defendants' asserted statute of limitations defense, the Plaintiff argued only the discovery rule, *i.e.*, that she did not discover the Defendants' wrongful acts until after the death of her mother on March 4, 2006, and that the statute of limitations, therefore, did not begin to run until her Mother's death. The Plaintiff's response to the Defendants' motion for summary judgment included her unsworn response to the Defendants' Statement of Material Undisputed Facts, in which she alluded to Mrs. Storey's disability:

> In February and March of 2001, Mrs. Storey sustained a series of strokes that left her physically and mentally disabled. Mrs. Storey was so disabled thereafter that she required round the clock care for the rest of her life. She was unable to speak clearly or write.

The unsworn response also specifically denied the Defendants' allegation that Mrs. Storey was capable of managing her financial affairs and did so until her death.[30] Nevertheless, the essential *legal theory* – the tolling of the statute of limitations because Mrs. Storey remained "of unsound mind" after her 2001 stroke – was not fairly raised to the trial court in response to the Defendants' motion for summary judgment. Thus, based on the record before the trial court at the time, it had no reason to find that the three-year statute of limitations was tolled because Mrs. Storey was "of unsound mind." **See Dye v. Witco Corp.**, 216 S.W.3d 317, 321 (Tenn. 2007) (stating that, when an argument is not presented in response to a motion for summary judgment and is raised for the first time on appeal, the trial court is deprived of the opportunity to make findings regarding the issue, and the argument is waived).

We note that this argument *was* presented to the trial court in the Plaintiff's motion to alter or amend. It is addressed below in our analysis of the trial court's denial of the motion to alter or amend.

---

[30]The Plaintiff's sworn affidavit did not incorporate by reference her sworn response to the Defendants' Statement of Material Undisputed Facts. Instead, it simply explains that her responses were "based, in part, upon the sworn deposition testimony of the Defendants, given in my presence."

## b. Fraudulent Concealment

The Plaintiff also argues that the trial court erred in not holding that the three-year statute of limitations was tolled by the Defendants' fraudulent concealment of the facts that formed the basis for Mrs. Storey's cause of action. The Plaintiff claims that the Defendants (1) remained silent about their excessive "gifts" to themselves from Mrs. Storey's funds, (2) did not to disclose to the Plaintiff the "gifts" to themselves purchased with Mrs. Storey's funds, (3) had knowledge of their actions, and (4) concealed the salient facts from the Plaintiff. ***See Pero's Steak & Spaghetti House v. Lee***, 90 S.W.3d 614, 621-22 (Tenn. 2002); ***see also Levine***, 266 S.W.3d at 435 (explaining that a statute of limitations may be tolled when a defendant engages in conduct intended to conceal an injury from the plaintiff). Because of this fraudulent concealment, the Plaintiff argues, the trial court should have held that the three-year limitations period did not commence until the opening of the estate on March 30, 2006, or until the disclosure by Mr. Yohanek of the excessive gifts through his amended gift tax filings on June 4, 2007.

In response, the Defendants point out that this argument likewise was not made to the trial court prior to the summary judgment hearing, and the Plaintiff submitted no evidence related to facts supporting this argument in response to the Defendants' motion for partial summary judgment. Therefore, the trial court had no reason to hold that the statute of limitations was tolled on this basis. In the alternative, the Defendants contend that this argument should be rejected because the Plaintiff made no allegation that any facts were concealed from *Mrs. Storey*, only that they were concealed from the Plaintiff. The Defendants claim that it is immaterial what facts were disclosed to or concealed from the Plaintiff, because the Plaintiff asserts this cause of action as the personal representative of Mrs. Storey. Therefore, the Defendants assert, this argument should be rejected.

After a thorough review of the record, we must conclude that, at the time the trial court was considering the Defendants' motion for partial summary judgment, the Plaintiff did not argue that the statute of limitations should be tolled by the Defendants' fraudulent concealment of pertinent facts. Rather, this argument was raised in the first instance in the Plaintiff's motion to alter or amend.[31] Therefore, as with the tolling argument based on Mrs. Storey's competence, the trial court had no reason to hold that the statute of limitations was tolled based on the Defendants' alleged acts of fraudulent concealment.

Because this argument was raised in the Plaintiff's motion to alter or amend, we will consider it in the course of our review of the trial court's decision on the motion to alter or amend.

---

[31] Actually, whether the argument was explicitly raised in the Plaintiff's motion to alter or amend is debatable. For purposes of our analysis, however, we will assume that the argument was made in the motion to alter or amend.

## Undue Influence

The trial court granted summary judgment in favor of Mrs. Yohanek and Mr. John G. Storey on the Plaintiff's undue influence claim, finding that the Plaintiff did not submit sufficient evidence to establish that a confidential relationship existed between Mrs. Storey and either of these defendants.[32] On appeal, the Plaintiff argues that the trial court erred in reaching this conclusion.

"The most common way of establishing the existence of undue influence is 'by proving the existence of suspicious circumstances warranting the conclusion that the [action] was not the [decedent's] free and independent act.'"[33] *Estate of Hamilton v. Morris*, 67 S.W.3d 786, 792 (Tenn. Ct. App. 2001) (quoting *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989)). There is no prescribed number of "suspicious circumstances" which must be met in order to establish undue influence.

However, a finding of a "confidential relationship" is a necessary predicate to an undue influence claim. "[T]he doctrine of indue influence is applicable only where there is a confidential relationship" between the dominant party and the other party. *See In re Estate of Brevard*, 213 S.W.3d 298, 302 (Tenn. Ct. App. 2006) (citing *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 219 (Tenn. Ct. App. 1997); *Simmons v. Foster*, 622 S.W.2d 838, 840 (Tenn. Ct. App. 1981)). "Confidential relationships can assume a variety of forms, and thus the courts have been hesitant to define precisely what a confidential relationship is." *Kelley v. Johns*, 96 S.W.3d 189, 197 (Tenn. Ct. App. 2002) (citing *Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974)). "In general terms, it is any relationship that gives one person the ability to exercise dominion and control over another." *Id.* (citing *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 410 (Tenn. 2002); *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002); *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn.

---

[32]The trial court denied summary judgment in favor of Mr. Yohanek on the undue influence claim, but the Plaintiff has since voluntarily dismissed this claim against Mr. Yohanek.

[33]In the context of undue influence in the execution of or altering of a last will and testament, the most frequently used "suspicious" circumstances are: "(1) a confidential relationship between the testator and the beneficiary; (2) the testator's poor physical or mental condition; and (3) the beneficiary's involvement in the procurement of the will in question." *Estate of Hamilton v. Morris*, 67 S.W.3d 786, 792 (Tenn. Ct. App. 2001) (quoting *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989)). However, other suspicious circumstances are also recognized: "(1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms; (6) the testator being in an emotionally distraught state; (7) discrepancies between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator." *Id.* at 792-93.

Ct. App. 1989)). "The burden of proof regarding a confidential relationship rests upon the party claiming the existence of such a relationship." *Childress*, 74 S.W.3d at 328.

Generally, confidential relationships arise in two situations: (1) "legal confidential relationships" and (2) "family and other relationships." *Estate of Brevard*, 213 S.W.3d at 302-03 (quoting *Matlock v. Simpson*, 902 S.W.2d 384, 385-86 (Tenn. 1995)). A legal confidential relationship arises when there is some legal connection between the dominant party and the weaker party, such as when a power of attorney is executed granting certain power to the dominant party. This type of relationship is confidential *per se*. *Id.*

In contrast, family relationships are not confidential *per se*. The party seeking to prove a confidential relationship in a familial context must prove the elements of "dominion and control" or some other condition indicating that the free will of the donor was destroyed and that the will of the donee was substituted therefor. *Id.*; *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977). Dominion and control has been described as a relationship in which "confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party." *Mitchell*, 779 S.W.2d at 389 (quoting *Iacometti v. Frasinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973)).

Proof of a family relationship "coupled with proof of domination and control" establishes a confidential relationship. However, such proof "does not make out a *prima facie* claim of undue influence unless an additional suspicious circumstance exists." *Estate of Brevard*, 213 S.W.3d at 303 (citing *Kelley*, 96 S.W.3d at 197). Thus, where the plaintiff establishes a confidential relationship by showing a family relationship coupled with proof of "domination and control," in order to establish undue influence, the plaintiff must go on to prove the existence of a suspicious circumstance.[34]

In this case, the Plaintiff's claims of undue influence against Mrs. Yohanek and Mr. John G. Storey are based on these two Defendants' family relationship with Mrs. Storey.[35] At trial, in order to establish her claims of undue influence against these two Defendants, the Plaintiff

---

[34]In Tennessee, "the existence of a confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, [raises] a presumption of undue influence[.]" *Matlock*, 902 S.W.2d at 386. This presumption is rebuttable. *See Estate of Neely*, No. M2000-01144-COA-R3-CV, 2001 WL 1262598, at *5 (Tenn. Ct. App. Oct. 22, 2001). "It can be rebutted, but only by clear and convincing evidence of the fairness of the transaction." *Id.* (citing *Matlock*, 902 S.W.2d at 386).

[35]The fact that Mrs. Storey and Mrs. Yohanek are joint signators on a checking account does not create a fiduciary relationship that is confidential *per se,* but it is relevant to show dominion and control over Mrs. Storey.

will have the burden of showing that these Defendants exerted "dominion and control" over Mrs. Storey, or that her will was somehow destroyed and replaced by the will of the Defendants. Conversely, however, to obtain summary judgment on these claims under the *Hannan* summary judgment framework, the Defendants must *negate* this element, that is, the Defendants must show by undisputed facts that they did *not* exert dominion and control over Mrs. Storey. *Fortune*, 2010 WL 3984705, at *3. We analyze the evidence on the undue influence claims first as to Mrs. Yohanek and then as to Mr. John G. Storey.

### *Mrs. Yohanek*

In their motion for partial summary judgment, the Defendants sought to negate the "confidential relationship" element of the Defendants' claim against Mrs. Yohanek by arguing that, although there was a family relationship, Mrs. Yohanek did not exert dominion and control over Mrs. Storey. In support of this argument, they submitted their own affidavits, which stated that, except during a short period after her stroke, Mrs. Storey was capable of managing her financial affairs and did so. In their statement of undisputed material facts, the Defendants stated that Mrs. Storey was physically disabled after her 2001 stroke, but that, except for a short time, she remained capable of managing her own affairs. The Plaintiff admitted that Mrs. Storey was physically disabled and added that she was mentally disabled as well, unable to speak or write. In addition, the Plaintiff denied the Defendants' assertion that Mrs. Storey had the capacity to handle her own affairs after her massive stroke, claiming that Mr. Yohanek and Mrs. Yohanek "took total control of [Mrs. Storey's] affairs in March 2001."[36] The Plaintiff also argued that Mrs. Yohanek had a confidential relationship with Mrs. Storey by virtue of the fact that she was a signatory on Mrs. Storey's checking account. The trial court found that the Plaintiff's evidence was insufficient to rebut the Defendants' proof that a confidential relationship did not exist between Mrs. Storey and Mrs. Yohanek.

On appeal, the Plaintiff argues that the Defendants' affidavits contained only conclusory allegations, and that the trial court erroneously shifted the burden to the Plaintiff to rebut the Defendants' claims. Furthermore, the Plaintiff claims that the trial court erred in finding that the evidence she submitted was insufficient to support a finding of a confidential relationship between Mrs. Storey and Mrs. Yohanek, and she argues that a confidential relationship is demonstrated by the fact that Mrs. Yohanek "had access to Mrs. Storey's bank accounts, into which Mrs. Yohanek made no deposits, but from which Mrs. Yohanek wrote herself a check for $150,000 that was used in the purchase of a new residence for Mr. and Mrs. Yohanek."

---

[36]The Defendants argued that the Plaintiff's assertion of these additional facts was not in compliance with Tenn. R. Civ. P. 56.

This issue of whether a confidential relationship arose from a relationship that is not a fiduciary relationship is a question of fact. *Estate of Brevard*, 213 S.W.3d at 303. A number of considerations are material to the issue, including the degree of Mrs. Storey's physical and mental disability, the fact that Mrs. Yohanek was a signatory on Mrs. Storey's bank account, the fact that the joint bank account contained only Mrs. Storey's money, the degree to which Mrs. Storey was dependent on Mrs. Yohanek because of Mrs. Storey's undisputed physical disability, and the degree to which Mrs. Storey relied on Mrs. Yohanek, physically, mentally, and emotionally, with respect to her banking and financial affairs. *See In re Estate of Schisler*, 316 S.W.3d 599, 609 (Tenn. Ct. App. 2009); *Estate of Brevard*, 213 S.W.3d at 303-05; *In re Estate of Neely*, No. M2000-01144-COA-R3-CV, 2001 WL 126598, at *4-5 (Tenn. Ct. App. Oct. 22, 2001). Moreover, the fact that Mrs. Yohanek's husband had a *per se* confidential relationship with Mrs. Storey may appropriately be considered.

It must be emphasized that the *Hannan* summary judgment standard does not place the burden on the Plaintiff at the summary judgment stage to prove a confidential relationship; the burden is on the Defendants to negate the claim, that is, to show conclusively that there was *not* a confidential relationship between Mrs. Yohanek and Mrs. Storey. Merely submitting affidavits to the effect that Mrs. Storey managed her financial affairs is insufficient in light of the undisputed evidence of Mrs. Storey's physical condition and the other undisputed facts upon which the Plaintiff relies. The record simply does not conclusively establish the degree of physical, mental, and emotional dependence Mrs. Storey had on Mrs. Yohanek, even assuming that Mrs. Storey in fact "managed" her own financial affairs. Thus, the evidence submitted by the Defendants did not shift the burden of production to the Plaintiff.

Under these circumstances, we must conclude that the trial court erred in granting summary judgment in favor of Mrs. Yohanek on the Plaintiff's claim of undue influence.

### *Mr. John G. Storey*

The Plaintiff also argues that the trial court erred in granting summary judgment on her undue influence claim against Mr. John G. Storey. On appeal, she argues that Mr. John G. Storey, "who received regular cash distributions of Mrs. Storey's funds from Mr. and Mrs. Yohanek, either had a confidential relationship with Mrs. Storey, or acted in concert with Mr. and Mrs. Yohanek through their confidential relationship to take Mrs. Storey's property."

Under a "put up or shut up" standard, the Plaintiff's claim that Mr. John G. Storey had a confidential relationship with Mrs. Storey would fail. The Plaintiff cites little in the way of specific, factual, or evidentiary support for her assertion that a confidential relationship existed between Mrs. Storey and Mr. John G. Storey, or that Mr. John G. Storey exerted

dominion and control over Mrs. Storey. She claims only that he acted in concert with the other Defendants to benefit from Mrs. Storey's assets to Mrs. Storey's detriment, and asserts a few specific instances in which Mr. John G. Storey used Mrs. Storey's VISA card to make purchases for himself, and one instance in which Mr. John G. Storey wrote a check on Mrs. Storey's bank account. Mr. John G. Storey testified in his deposition that the checks came from either Mrs. Storey or Mr. Yohanek, and that Mrs. Storey allowed him to use her credit card at his discretion. The trial court found that there were "no facts to support the Plaintiff's claim of undue influence against the defendant Mr. Storey."

However, we are compelled to utilize the summary judgment standard adopted by our Supreme Court in **Hannan**. As we interpret it, to obtain summary judgment on the claim of undue influence, Mr. John G. Storey must essentially prove a negative, that is, must establish conclusively that he did *not* have a confidential relationship with Mrs. Storey. As noted in **Fortune**, "[a] party will not succeed on a motion for summary judgment merely by asserting that the nonmoving party is without evidence to support its claims." **Fortune**, 2010 WL 3984705, at *3. The moving party must "disprove an essential factual claim made by the nonmoving party." **Id.**

Here, it is undisputed that Mrs. Storey was completely physically disabled and that Mr. John G. Storey received the benefit of gifts from Mrs. Storey's assets. As noted above in our analysis of the claim against Mrs. Yohanek, affidavits asserting that Mrs. Storey "managed" her financial affairs do not "disprove" the Plaintiff's assertion that Mr. John G. Storey had a confidential relationship with Mrs. Storey. In the absence of evidence from the Defendants showing, based on undisputed facts, that Mr. John G. Storey did not have a confidential relationship with Mrs. Storey, the burden of production was not shifted to the Plaintiff.

Therefore, despite the thin evidence submitted by the Plaintiff as to Mr. John G. Storey, under the **Hannan** analytical framework for a summary judgment motion, we must conclude that the trial court erred in granting summary judgment in favor of Mr. John G. Storey on the issue of undue influence.

## Conversion

The Plaintiff next argues that the trial court erred in granting summary judgment in favor of Mr. Yohanek and Mr. John G. Storey on her conversion claim.[37] The trial court found that the evidence submitted by the Defendants negated a finding that they exerted dominion and control over Mrs. Storey's property, in that the affidavits stated that Mrs. Storey was capable

---

[37]The trial court denied summary judgment in favor of Mrs. Yohanek on the claim of conversion, but the Plaintiff has since voluntarily dismissed that claim.

of managing her own financial affairs and did so. The trial court also considered the evidence showing Mrs. Storey had a history of making gifts. Finding that the Plaintiff could not prove the dominion and control element of her conversion claim, the trial court held that summary judgment in favor of Mr. Yohanek and Mr. John G. Storey was proper.

"A conversion, in the sense of the law of trover, is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965). Conversion is an intentional tort, and a party seeking to make out a *prima facie* case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).

We consider first the conversion claim as to Mr. Yohanek, and then as to Mr. John G. Storey.

### *Mr. Yohanek*

In her complaint, the Plaintiff alleged that Mr. Yohanek, alone and together with the other Defendants, used the assets of Mrs. Storey for his own purposes. She claimed that he made excessive withdrawals from Mrs. Storey's retirement, savings, and annuity accounts, and that he made substantial purchases on credit cards for his own purposes to the detriment of Mrs. Storey. In addition, she alleged that Mr. Yohanek made excessive gifts from Mrs. Storey's estate that were outside of his authority, made under the auspices of a power of attorney that did not include the authority to make gifts, and made while Mrs. Storey was incompetent. The Plaintiff claimed that "[t]he actions of the Defendants constitute conversion of the property of Mrs. Storey and her Estate."

In their motion for partial summary judgment, the Defendants did not seek summary judgment on the claim of conversion as to Mr. Yohanek. Nevertheless, the trial court granted summary judgment to Mr. Yohanek on this claim.

On appeal, both parties argue the issue substantively, arguing as to Mr. Yohanek and Mr. John G. Storey together, and do not refer to the fact that summary judgment was not sought on the claim as to Mr. Yohanek. The Plaintiff states that she "relied upon the same facts she presented to support her claims" of undue influence, and that she "cited sufficient material facts to the Trial Court to establish that genuine issues of material fact exist as to her claims against the Defendants for conversion." The Defendants respond that no evidence was submitted to establish that either Mr. Yohanek or Mr. John G. Storey exerted dominion or control over Mrs. Storey's assets in defiance of her rights, so the elements of conversion cannot be established.

Because the Defendants did not move for summary judgment in favor of Mr. Yohanek on the claim of conversion, we must conclude that the trial court erred in granting summary judgment to Mr. Yohanek on this claim. Thus, we reverse the grant of summary judgment in favor of Mr. Yohanek for conversion to the extent that those claims are not barred by the statute of limitations.

### *Mr. John G. Storey*

The Defendants argued in their motion for partial summary judgment that Mr. John G. Storey was entitled to summary judgment on the Plaintiff's conversion claim, asserting that there was no evidence that he "ever appropriated anything of Ms. Eloise Storey's for his own use and benefit." The Plaintiff did not allege that Mr. John G. Storey had any control whatsoever over Mrs. Storey's bank account; rather, she alleged that Mr. John G. Storey received cash gifts from his mother in the form of checks written by Mr. Yohanek, and used Mrs. Storey's credit card to make purchases for his own benefit. Mr. John G. Storey conceded that, during Mrs. Storey's lifetime, he received gifts from her in the form of checks on Mrs. Storey's bank account, but he stated that those checks were given to him either directly by his mother or on his mother's behalf by Mr. Yohanek. In his deposition, Mr. John G. Storey conceded that he used Mrs. Storey's credit card for some purchases, but he testified that Mrs. Storey gave him her credit card to use at his discretion.[38]

We find that the trial court properly granted summary judgment in favor of Mr. John G. Storey on the Plaintiff's conversion claim. In order to establish a claim of conversion, a plaintiff must show the defendant appropriated another's property to one's own use and benefit through dominion and control in defiance of the other person's rights. Here, the undisputed evidence submitted by the Defendants showed that Mr. John G. Storey did not exert dominion and control over either Mrs. Storey's bank account or her VISA account, but that the checks written to Mr. John G. Storey from Mrs. Storey's bank account, except for one, was written by either Mr. or Mrs. Yohanek and given to Mr. John G. Storey. Furthermore, Mr. John G. Storey's testimony that his mother willingly gave him her credit card for his own use is undisputed by the Plaintiff.[39] Thus, the Defendants negated the

---

[38]Some VISA statements were entered into evidence, but it is unclear who made the various charges. Mr. John G. Storey testified that he used the card his mother gave him to "charge a few tanks of gas," and that he had the authority to do this. The Plaintiff argued that Mr. John G. Storey used the VISA credit card to purchase concrete materials for the Tunica fishing camp property owned by Mrs. Storey that "he knew he would inherit." When the purchases were made, however, Mrs. Storey owned the fishing camp property, so any purchase made for the improvement of that property inured to her benefit during her lifetime.

[39]Whether Mr. John G. Storey obtained that credit card through undue influence is a different issue.

Plaintiff's claim that Mr. John G. Storey exerted dominion and control over Mrs. Storey's assets in defiance of her rights.

The burden was therefore shifted to the Plaintiff to submit evidence to show that Mr. John G. Storey's acquisition of Mrs. Storey's assets resulted from his own dominion and control over the property in defiance of Mrs. Storey's rights. This she did not do; instead, she submitted a statement of material facts in which she identified numerous transactions made by *all* of the Defendants from her mother's bank account or on her VISA credit card that the Plaintiff claimed were unauthorized. Even on appeal, the Plaintiff relies on "the same facts she presented to support her claims [of] undue influence," and she states generally that those facts "establish that genuine issues of material fact exist as to her claims . . . for conversion." For this reason, we agree with the trial court's finding that the Defendants submitted evidence that negated the Plaintiff's assertion that Mr. John G. Storey appropriated property of Mrs. Storey in defiance of her rights, and that the Plaintiff failed to submit any evidence to rebut Mr. John G. Storey's evidence that each gift was authorized. Accordingly, we find that summary judgment in favor of Mr. John G. Storey on the conversion claim was appropriate.

## Breach of Fiduciary Duty

The Plaintiff argues on appeal that the trial court erred in granting summary judgment in favor of Mr. Yohanek on the claim for breach of his fiduciary duties in his capacity as Mrs. Storey's attorney in fact during Mrs. Storey's lifetime.[40] The Defendants assert that the trial court's grant of summary judgment in favor of Mr. Yohanek should be affirmed.[41] We observe, however, that the Defendants' motion for partial summary judgment does not seek summary judgment in favor of Mr. Yohanek on the Plaintiff's claim that he breached his fiduciary duty to Mrs. Storey as her attorney in fact. Nevertheless, the trial court granted summary judgment in favor of Mr. Yohanek on this claim.

---

[40]Although the trial court granted summary judgment in favor of Mrs. Yohanek and Mr. John G. Storey on the Plaintiff's breach of fiduciary duty claim, the Plaintiff challenges only the grant of summary judgment against Mr. Yohanek in this regard.

[41]The Plaintiff also alleges that the trial court erred in granting summary judgment in favor of Mr. Yohanek on the allegation that he breached his fiduciary duty as the executor of Mrs. Storey's estate. The Defendants acknowledge that the trial court "did not delineate the basis for dismissing the claim of breach of fiduciary duty against Mr. Yohanek, in his capacity as Executor." We need not address Plaintiff's argument in this regard because, as we have found, the trial court did not, in fact, grant summary judgment in favor of Mr. Yohanek on this claim, and it remains pending before the trial court.

As with the Plaintiff's claim of conversion against Mr. Yohanek, because the Defendants did not seek summary judgment in favor of Mr. Yohanek on this claim, the trial court's grant of summary judgment in favor of Mr. Yohanek on the breach of fiduciary claim must be reversed.

Even assuming *arguendo* that summary judgment was requested by Mr. Yohanek on this claim, we would conclude based on this record that summary judgment in favor of Mr. Yohanek is not warranted under the ***Hannan*** summary judgment standard. The holder of a power of attorney, *i.e.*, the dominant party, serves in a fiduciary relationship to the grantor of the power to the extent the holder exercises the powers granted. ***See*** T.C.A. § 34-6-107;[42] ***see also Matlock***, 902 S.W.2d at 386. As the agent of the grantor, the dominant party is bound to exercise the utmost good faith, loyalty, and honesty toward the grantor. ***See Roberts v. Iddins***, 797 S.W.2d 615, 617 (Tenn. Ct. App. 1990). Therefore, as Mrs. Storey's attorney in fact, Mr. Yohanek owed her a fiduciary duty to act on her behalf at all times with the utmost good faith, loyalty, and honesty.

Furthermore, assuming, but not deciding, that Mr. Yohanek was authorized under the power of attorney to gift Mrs. Storey's money and assets, gifts given by one holding a power of attorney must be consistent with the principal's history of gift-giving. ***See*** T.C.A. § 34-6-110.[43] Therefore, any gifts given by Mr. Yohanek were required to be made "in accordance

_____

[42]This statute provides:

> An attorney in fact is in a fiduciary relationship with the principal, but only to the extent that the attorney in fact undertakes to act under the power of attorney. Among the fiduciary duties required by law, an attorney in fact has a duty to adequately account to the principal, or to any legal representative of the principal appointed by the principal or by a court, for actions taken by the attorney in fact in the exercise of the power of attorney. It is the intent of the general assembly that this section have retroactive application.

T.C.A. § 34-6-107 (2007).

[43]The statute provides:

> (a) If any power of attorney or other writing:
>
>> (1) Authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do; or
>>
>> (2) Evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or to deal with the principal's property;

(continued...)

with the principal's personal history of making or joining in the making of lifetime gifts." *Id.* Though the record contains some evidence of Mrs. Storey's gift-giving, it certainly does not conclusively establish that the gifts by Mr. Yohanek were in accordance with Mrs. Storey's history of gift-giving prior to her execution of the power of attorney in 1998.

Thus, the evidence proffered by the Defendants is clearly insufficient to negate an element of the Plaintiff's breach of fiduciary duty claim against Mr. Yohanek. The Defendants submitted no evidence of Mrs. Storey's knowledge and participation in specific transactions. The evidence does not conclusively establish that Mr. Yohanek acted in Mrs. Storey's best interest or with the utmost good faith, loyalty, and honesty, either in the transactions generally or with respect to specific transactions. This is the Defendants' burden under the summary judgment analytical framework in *Hannan*.

For these reasons, we reverse the grant of summary judgment in favor of Mr. Yohanek on the Plaintiff's claim that he breached his fiduciary duty to Mrs. Storey as her attorney in fact.

### Civil Conspiracy

In the Defendants' motion to dismiss and/or for partial summary judgment, the Defendants argued that the Plaintiff's claims based on civil conspiracy should be dismissed for failure to state a claim upon which relief can be granted. They alleged that the Plaintiff made "no specific allegation as to how the Defendants acted jointly in a civil conspiracy," and that mere conjecture and conclusory allegations unsupported by material facts are not sufficient to state a claim for civil conspiracy. In response, the Plaintiff argued that "the facts contained in her pleadings and Statement of Facts, taken in a light most favorable to her, establish all of the elements of the causes of action for civil conspiracy . . . required by *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 ([Tenn. Ct. App.] 2006)." The trial court addressed the civil conspiracy claims as a part of the Defendants' motion for partial summary judgment, rather than as a motion to dismiss. In doing so, the trial court held that the Defendants were entitled to summary judgment on these claims because the Plaintiff offered

---

[43](...continued)

> then the attorney-in-fact or agent shall have the power and authority to make gifts, in any amount, of any of the principal's property . . . *in accordance with the principal's personal history of making or joining in the making of lifetime gifts*. This section shall not in any way limit the right or power of any principal, by express words in the power of attorney or other writing, to authorize, or limit the authority of, any attorney-in-fact or other agent to make gifts of the principal's property.

T.C.A. § 34-6-110(a) (2007) (emphasis added).

no proof that the Defendants acted in concert together to accomplish any of the allegedly unlawful acts.

On appeal, the Plaintiff argues that the trial court erred in granting the Defendants summary judgment on her claim that "the Defendants conspired with one another in their exercise of undue influence over Mrs. Storey and in their conversion of her property." She argues that, in her response to the Defendants' motion for partial summary judgment, she "presented evidence to support her contention that the Defendants acted in concert through the use of bank accounts, [through] use of credit cards, through gift tax returns, and for their respective benefits, without regard to the interests of Mrs. Storey or Mrs. Huber." In her appellate brief, the Plaintiff cites to the excerpt from the deposition of Mr. John G. Storey, copies of tax returns prepared by Mr. Yohanek on behalf of Mrs. Storey and her estate, Mrs. Storey's financial ledgers from 2001 through her death in March 2006, and VISA statements from the relevant time period. Because she "pleaded and presented the required "underlying predicate tort" [of] undue influence and conversion," the Plaintiff argues, and she further "presented facts in response to the Defendant's Motion for Summary Judgment that established for the Court that the Defendants acted together in the years prior to Mrs. Storey's death to help themselves to her assets," the Defendants were not entitled to summary judgment on her civil conspiracy claims.

In response, the Defendants again argue that the Plaintiff's complaint should be dismissed on its face, because it alleges "nothing more than . . . mere conjecture and conclusory allegations that the Defendants acted in concert with each other," and the Plaintiff "made no specific allegation of a material fact that" could support a finding of civil conspiracy among these Defendants. The Defendants further claim that, even if the Plaintiff's complaint sets forth sufficient facts to state a claim for conspiracy, the Defendants submitted sufficient evidence to negate at least one element of the cause of action, and summary judgment on this claim was warranted.

We first address whether the trial court erred in failing to dismiss the Plaintiff's claims for civil conspiracy for failure to state a claim upon which relief could be granted.[44] Tenn. R. Civ. P. 12.02(6). In doing so, we recognize that a motion to dismiss for failure to state a claim seeks only to determine whether the plaintiff has properly set out a cause of action; it "challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof." *Trau-Med of America, Inc. v. Allstate Insurance Company*, 71 S.W.3d 691, 696-97 (Tenn. 2002). The *Trau-Med of America* Court explained:

---

[44]Although the trial court treated the Defendants' motion to dismiss as a motion for summary judgment, the Defendants have consistently argued in the trial court and on appeal that the Plaintiff's complaint should have been dismissed on its face.

A Rule 12.02(6) motion to dismiss only seeks to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof, and, therefore, matters outside the pleadings should not be considered in deciding whether to grant the motion. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.,* 986 S.W.2d 550, 554 (Tenn.1999). In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996). It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848 (Tenn. 1978). Great specificity in the pleadings is ordinarily not required to survive a motion to dismiss; it is enough that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000) (citing Tenn. R. Civ. P. 8.01).

*Trau-Med of Am.*, 71 S.W.3d at 696-97. Whether a trial court has erred in ruling on a motion to dismiss for failure to state a claim is a question of law, which we review *de novo*, with no presumption of correctness in the trial court's decision. *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008).

This Court has set out the elements necessary to establish a claim for civil conspiracy: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid*, 221 S.W.3d at 38. In addition, a claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Conspiracy, standing alone, is not actionable where the underlying tort is not actionable. *Id.* at 179-80. While "great specificity in the pleadings is ordinarily not required," civil conspiracy claims must be pled with some degree of specificity in order to survive a motion to dismiss; conclusory allegations unsupported by material facts will not be sufficient to state a claim. *Kincaid*, 221 S.W.3d at 38 (citing *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002)); *see also O'Dell v. O'Dell*, 303 S.W.3d 694, 697 (Tenn. Ct. App. 2008) (quoting *Kincaid*, 221 S.W.3d at 38). We turn now to the Plaintiff's complaint to determine whether the allegations therein properly set out a claim for civil conspiracy.

Without using the term "civil conspiracy," the Plaintiff's complaint alleges that the Defendants acted "jointly and severally" and that they "acted together and in concert," both during her lifetime and after her death, to deprive Mrs. Storey and her estate of assets for their separate purposes and benefit. The Plaintiff does not enumerate "civil conspiracy" as a separate cause of action in her complaint, nor is the term "civil conspiracy" used in the complaint. Rather, the Plaintiff states that, after she reviewed Mrs. Storey's records, she "learned that [the Defendants] seemed to be collaborating on using the assets of Mrs. Storey for their own purposes." She then lists allegedly wrongful actions taken by each of the Defendants individually and states that the Defendants "acted together and in concert in abusing confidential and fiduciary relationships each had with regard to Mrs. Storey and her assets." Under the section of the complaint entitled "Theories of Recovery," the Plaintiff alleges that the all of the Defendants were liable for undue influence, breach of fiduciary duties to Mrs. Storey and the estate, and conversion, and that all of these wrongs were committed "jointly and severally" by the Defendants for their own separate benefit. In the section of the complaint entitled "Damages Sought," the Plaintiff again states that "[t]he Defendants acted together in concert and aided and abetted one another in their actions alleged above for which they should be held liable to the Estate, jointly and severally."

Although the Plaintiff sets out numerous allegations of fact that describe tortious conduct by the Defendants individually, she does not identify any material facts that would support a claim that the Defendants acted with a common design to accomplish an unlawful purpose. Rather, as argued by the Defendants, the Plaintiff has merely set out conclusory statements that the Defendants acted "jointly and severally," and that they acted "in concert." Such a formulaic recitation of basic terms implying that a conspiracy exists is insufficient to state a claim for relief for civil conspiracy. *See Hermosa Holdings, Inc. v. Mid-Tennessee Bone & Joint Clinic, P.C.*, No. M2008-00597-COA-R3-CV, 2009 WL 711125, at *8 (Tenn. Ct. App. Mar. 16, 2009). Even on appeal, the Plaintiff does not identify material facts in her complaint that support her claim that these Defendants had a common design to accomplish, by a concerted action, an unlawful purpose or a lawful purpose by unlawful means. Rather, the Plaintiff has set forth in her complaint wrongful acts allegedly committed by the individual Defendants, and then makes the conclusory assertion that they were committed "jointly and severally" and "in concert" with no material facts to support her claim. Therefore, because the Plaintiff did not plead civil conspiracy with the necessary specificity, we must find that the complaint fails to state a claim for civil conspiracy with respect to both the claims brought on behalf of the estate and the claims brought on her own behalf as a beneficiary of the estate. On this basis, we affirm the trial court's dismissal of the Plaintiff's claim of civil conspiracy.

**Motion to Alter or Amend or Set Aside and Motion to Compel**

Finally, the Plaintiff argues that the trial court erred in denying the motion to alter or amend and the motion to compel production of documents.[45] We review the denial of a motion to alter or amend for an abuse of discretion. *See Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003). We also review the denial of a motion to compel production for an abuse of discretion. *Deuel v. Surgical Clinic, PLLC*, No. M2009-01551-COA-R3-CV, 2010 WL 3237297, at *6 (Tenn. Ct. App. Aug. 16, 2010). An abuse of discretion occurs when the trial court "applies an incorrect standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). Under this standard, we must uphold the trial court's decision "as long as reasonable minds could disagree about its correctness." *Id.*

The trial court denied the Plaintiff's motion to alter or amend because all of the evidence she submitted in support of the motion – her affidavit and Dr. Koplon's medical records for Mrs. Storey from 2004-2006 – were available prior to the motion for summary judgment. The trial court found that these records should have been submitted in response to the Defendants' summary judgment motion. In addition, the trial court noted that the pre-2004 medical records had been missing since July 2008, when Dr. Koplon produced the post-2004 records. The trial court found that it was incumbent upon the Plaintiff to either issue another subpoena to Dr. Koplon for the missing records, or put the court and the parties on notice that discovery was still pending on these records. Under these circumstances, the trial court concluded that "[a]n exercise of due diligence would require a combination of these actions." The trial court rejected the Plaintiff's argument that Mrs. Storey's incompetence or the Defendants' fraudulent concealment should toll the statute of limitations, because these legal arguments were not raised prior to the hearing on the motion for summary judgment.

In *Harris v. Chern*, *supra*, the Tennessee Supreme Court held that, when additional evidence is submitted to support a motion to revise a grant of summary judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, a trial court should consider, when applicable: (1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; (2) the importance of the newly submitted evidence to the movant's case; (3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; (4) the likelihood that the nonmoving party will suffer unfair prejudice; and (5) any other relevant factor. "Even though *Harris v. Chern* involved a Tenn. R. Civ. P. 54.02 motion, we have consistently used its standards to review Tenn. R. Civ. P. 59.04 motions." *Kenyon v. Handal*, 122 S.W.3d 743, 763 (Tenn.

---

[45]The Plaintiff does not argue that the trial court erred in failing to set aside its order granting partial summary judgment.

Ct. App. 2003). "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). A motion to alter or amend should be granted when the controlling law changes before the judgment becomes final, when previously unavailable evidence becomes available, or when necessary to correct a clear error of law or prevent injustice. *Id.* "A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *Id.*

Under this standard, we must conclude that the trial court below did not abuse its discretion in denying the Plaintiff's motion to alter or amend. The evidence that the Plaintiff submitted with her motion to alter or amend was available to her well before the hearing on the motion for summary judgment. The Plaintiff offered no valid reason why she did not obtain and submit these documents in support of her argument prior to the hearing on the motion for summary judgment. The Plaintiff gives no reason why the medical records that she sought to compel were not discoverable prior to the hearing through due diligence. As the trial court found, the Plaintiff's arguments regarding the tolling of the statute of limitations were simply new legal theories. For all these reasons, we cannot conclude that the trial court abused its discretion in denying either the Plaintiff's motion to alter or amend or her motion to compel production.

## CONCLUSION

In sum, as to the Defendants' assertion of the statute of limitations as an affirmative defense, we affirm the trial court's refusal to toll the statute based on Mrs. Storey's alleged mental incompetency or the Defendants' alleged fraudulent concealment; however, we reverse the trial court's ruling on the discovery rule. On the claims of undue influence, we reverse the grant of summary judgment in favor of Mrs. Yohanek and Mr. John G. Storey. On the claims of conversion, we reverse the grant of summary judgment in favor of Mr. Yohanek, and affirm the grant of summary judgment in favor of Mr. John G. Storey. We affirm the trial court's dismissal of all claims based on civil conspiracy, albeit for different reasons. We reverse the grant of summary judgment in favor of Mr. Yohanek on the breach of fiduciary duty claim, and note that the claim against Mr. Yohanek based on breach of fiduciary duty in his capacity as executor of the estate is among the claims that are still pending before the trial court. Finally, we affirm the trial court's denial of the Plaintiff's motion to alter or amend and the denial of her motion to compel production of documents. The cause must be remanded for further proceedings.

The decision of the trial court is affirmed in part and reversed in part, as set forth above, and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed one-half to Appellant Peggie Sherrill Huber and her surety, and one-half to

Appellees Lawrence G. Yohanek, CPA, a/k/a Larry G. Yohanek, Sharron S. Yohanek, and Mr. John Gary Storey, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE